Well, good morning, Your Honors. It's the last case of the day, so I guess it's time for a tax court case. My name is Bradley Patterson. I represent the appellants who are the taxpayers, the Bergmanns. I'd like to save five minutes for rebuttal, if I may. If it pleases the Court, the issue here on appeal is, are the appellants liable for an accuracy-related penalty for year 2001, or did they timely file a qualified amended return, which eliminates the accuracy-related penalty? The tax court found that they were liable for the accuracy-related penalty because they did not timely file a QAR, qualified amended return. We contend here on appeal that the tax court erred in one of two ways. It either erred in applying a later enacted version of the regulation that cuts off the time for filing a QAR, or it applied the correct statute but did so incorrectly. The issue here today is what cuts off the time to file a QAR, and that's governed by regulations issued by the Internal Revenue Service. The prior regulation, which is the one that applies to the return filed by the appellants, is Treasury Regulation Section 1.6664-2C32. And I promise not to say that again. It has two primary requirements. And those requirements are, number one, is the time any person described in Section 6700A is first contacted by the Internal Revenue Service concerning an examination of an activity described in Section 6700A with respect to which the taxpayers claim the tax benefit. So two requirements. It has to be contact by the IRS to a person described in 6700A concerning an activity that is also governed by 6700A. After the return was filed, the regulation was changed and given a new number. It's now Treasury Regulation Section 1.6663-2C31B. It has two major differences. And those major differences are, one, it simply says the date any person is contacted. It no longer says a person that is described in Section 6700A. It says any person. And the second thing, it doesn't return, it says regarding any activity under 6700. It doesn't say that the taxpayer had to take an activity that qualified under 6700A. So what is 6700A that applies to the taxpayer? So let me ask you, when the IRS or when the Department of Treasury, the Internal Revenue Service, issued that revised regulation, they had a report, they had an explanation? They did, Your Honor. And they seemed to want to make it crystal clear what they intended under the – they wanted to clarify prior regulation. To make it crystal clear, contact was all that was necessary. Your Honor, I agree. That is exactly what they said. And, frankly, I think that is indefensible. So isn't that entitled to any – the way in which they look back at the prior regulation and offer their – offer an explanation for what they're doing, why doesn't – why isn't that entitled to some deference? It is entitled to some deference, Your Honor. And the test is very simple. It is an agency's interpretation of its own regulations is controlling, unless plainly erroneous or inconsistent with the regulatory text. And the problem here is that when the Treasury Department amended the regulation, they said in Treasury decision 9186, quote, these temporary regulations also clarify the existing rules applicable to qualified amended returns. That's what they said, but that's not what they did. They say that the temporary regulation clarifies that the period for filing a qualified amended return terminates on the date the IRS first contacts a person concerning an examination under Section 6700, regardless of whether the IRS ultimately establishes that such person violated Section 6700. The problem with that is it ignores the plain language of the original regulation, which was, again, the time any person described in Section 6700A is contacted by the IRS. They simply ignored that. And when they amended the regulation – Kennedy, counsel, I have a question for you. In the tax court decision, don't they have a statement or a footnote right near the start saying that they are applying the regulations in effect at the pertinent times? That's what the judge said, Your Honor, and that's our position is, is that although she said that, she never analyzed 6700A, and there was never a finding that there had been any misrepresentations or fraud which was required under 6700A2. In fact, the IRS in the pretrial stipulations conceded that they had no – they could not identify any false statements that had been made. So that alone would indicate that 6700A2 had not been satisfied. And the trial judge never dealt with any of this at all. She simply ignored it, which is consistent with the later regulation, not with the regulation that was in place. Going back to the issue of clarification of the regulation, in the Respondent's QA, on page 18, quote, The temporary regulation promulgated in Treasury Decision 9186 also added several new terminating events that would end the period for filing a QAR. How do you add requirements and say it's simply clarifying? It is obviously a new regulation. And we're fine with that, but it doesn't apply to this case. What applies to this case is you have to have a finding that the person contacted is described in 6700A, that the tax treatment was also falls under 6700A. 6700A has two prongs. Number one is someone has to organize an entity or plan. That was conceded in the tax court. That's not at issue here. What is at issue is prong two, which says there has to be a fraudulent statement or fraudulent matter that is presented. The IRS, as I said a moment ago, conceded they could not identify any false statements. So as a matter of law, 6700A2 was not satisfied. Therefore, the time to file the QAR had not yet run. Now, the IRS argues that QARs are based on timing of notice. And I agree that under the current regulation that is true. It is not true under the prior regulation. It required two things. It required contact, which existed. But it required contact with a person that qualifies under 6700A. Now, that actually makes sense if you look at it, because what they were doing was saying, if you make false statements as a promoter, we have the right to assess penalties. They changed that and made it broader when they amended the regulation, so that now it doesn't matter if there's a false statement or not. Now it is simply timing. But under the regulation in effect, they were penalizing people for making false statements. And here there were no false statements. In its brief, the government quotes the Sala case, a district court case, which is neither binding on this Court nor on the tax court case. But they didn't cite to the portion of the case that is relevant to the appellant's case. And that is very simply, the court in Sala held that a notice by the IRS to trigger a QAR end date has to reference the specific transaction, not a general reference to tax shelters or Notice 2000-44. And that was the direct holding of Sala, and we believe that that was the correct holding under the regulation in effect at the time. Under the current regulation, it would be a different outcome. But that's not one that affects this Court today or this case. Finally, the government has said that if this panel was to find in favor of the appellants, that the case should be remanded back to the tax court for further proceedings. And we disagree. And the reason we do is the government claimed, quote, a remand would be necessary for the tax court to make additional factual findings regarding whether KPMG's conduct rendered it subject to a penalty under IRC section 6700. Well, again, under 6700, you have to have a false or fraudulent statement. The IRS has already conceded in the stipulations pre-trial they don't have any. There is nothing for the trial court to decide. Furthermore, in the trial court's decision, it didn't reference any fraudulent statements or misstatements of fact. Now, I will point out that the IRS has the burden of proof at trial to show fraudulent conduct under 26 U.S.C. section 7491C. They didn't do so. As a matter of fact, they did exactly the opposite. They said we don't have any of that information. So there's nothing to be left to be cited on remand. This Court should make the decision that the QAR was timely filed and that there is no accuracy-related penalty. Thank you. Anthony Sheehan. I represent the Commissioner of Returnal Revenue. I'd like to start off, first of all, with this so-called concession by the IRS. That is a misstatement of the stipulation of facts. It says, and I quote, Respondent stipulates that for purposes of this proceeding, he will not contend that Mr. Greenberg, who is the one who promoted the shelter, made false oral statements to KPMG's clients, partners or former partners concerning the tax benefits they could derive from the SOS transactions. Rather, Respondent will contend that Mr. Greenberg made false statements in the KPMG tax opinions he prepared for KPMG clients. There was no concession by the IRS in the stipulation of facts, and it's completely erroneous to represent otherwise. Indeed, in the trial brief after the evidentiary hearing, the Commissioner requested a series of findings of fact that would correspond and disqualify this return as a qualified amended return, even under the Bergmann's interpretation of the controlling regulation. And we set forward some of those on page 33 of our answering brief. So just go to the regulation. Let's assume that they don't even say assume, but it sort of looks like the tax court has applied the correct regulation. But if you go to that regulation that was in effect at the time. Yes. Okay. It gets us over to IRS Code Section 6700A. If you go to 6700A, A has two parts, right? Yes. They argue. Yes. So why, you know, at the end of, before the section jumps to Part 2, it says, and makes or furnishes or causes another person to make or furnish, blah, blah, blah. Why, if you look at the text of the statute, it seems at least superficially to support his arguments. Well, we've got to look at the. So how do we, how do we, just explain to me how we deal with that. Yes, Your Honor. It's sort of like a painting where if you look really closely, a pointless painting, you just see the dots. As you come back, you begin to see the whole picture. If you look at the text of the regulation and the term, the key term here, described in Section 6700A, that can be read in one of two ways. We submit it should be read as informational or described as a longhand linguistic way, saying a shelter promoter regarding a shelter. It identifies we're looking at the shelter promoter regarding a shelter that they were promoting. And that is requiring ultimate proof that, yes, indeed, this person would be subject to a penalty. Take it back a step. Context is important in interpreting language of statutes and of regulations. For a qualified amended return for this section of the regulation, it all deals with timing. It deals with before the earliest of three terminating events. Each terminating event is when someone is first contacted about something like an audit. And it makes little sense in the middle of that to say, well, it's not just contacting the shelter promoter, but, indeed, for this one triggering event, the IRS has to put on a full-blown 6700 case about whether this third party could have been penalized given who chose not to in order to cut off the time for a qualified amended return. Taking another step back, you look at policy. The accuracy-related penalty is compensatory. It helps to reimburse the IRS for the cost of detecting and correcting errors. The qualified amended return sort of sets up a quid pro quo. If you voluntarily come forward and save us the time and expense of detecting the mistake, you won't get penalized for it. But under the taxpayer's policy, under the Bergman's policy, that would fail. A taxpayer could take a wait-and-see position. Once they know the shelter is under audit, they could all file qualified amended returns and hope that the 6700 investigation doesn't pan out so they become qualified amended returns. But the IRS still had to go through the trouble of detecting and starting to investigate the shelter. And then finally, we get to deference under the Our Opinion, where if, you know, even if you say this text was unclear as to whether it was descriptive or prescriptive, the agency's interpretation of its own regulation is entitled to deference. The IRS did state, as you pointed out, Your Honor, that they were clarifying. And as I've just demonstrated, that the text of this regulation can be read consistent with it being just a clarification. Plus, this amendment happened before any of this litigation and before the Sala case, and it grew out of the IRS's experience with lots of clever attorneys. Now, the Bergmans would like to bring in their other terminating events added. We're not concerned about these additional things the IRS added. We're concerned about what happened to this one section of this one regulation. I would also like to point out the second part of the Bergmans' argument, which was also in their reply brief but only in their reply brief, which is important, is they talk about the Sala opinion. Well, there were two opinions by the district court in Sala. There was one earlier in the proceeding. It was an unpublished opinion. That's the one the tax court relied upon to show that the only other opinion out there interpreting this regulation is consistent. Later in the Sala proceeding, there was a published opinion which took nothing away from the earlier opinion, but it discussed a different issue, whether a contact has to name a shelter specifically or whether the contact can say this type of shelter and the taxpayer is the same or substantially similar. In the taxpayer's opening brief, they did not mention, they did not even cite Sala. They didn't mention the second test. That did not come up until the reply brief, and it should count as waived. And if the Court unless the Court's. Kagan, it's hard to just ignore the second opinion in Sala. So where did the Court go wrong there? The tax court did not, well, in Sala, Sala court. The way the, if you look again back to the regulatory text, it says, an examination of an activity, an activity. Activity is, you know, a series of actions, or in this case, a series of transactions, if you will. And if a taxpayer is doing these actions or going through these same steps and it's the same or substantially similar to the one the notice is given, that should be covered. That comports better with the purpose of a qualified amended return. Otherwise, shelter promoters could play a name game. You have the Bergman transaction, you have the Smith transaction, you have the Jones transaction. Make sure the names are all different. And once the IRS catches one of them, all the others can file their qualified amended returns because their specific, specifically named transaction wasn't in there. The key is what is the taxpayer doing? What steps are they taking? What options are they trading? What partnerships are they establishing to try to avoid their taxes? And if the transactions a taxpayer is doing is fairly included within the contact information, and I believe there's no question here that it was, then that should count. That's where the solid court went wrong. Let me ask you this. I have one last question for you. Is this case sort of like an aberration? I mean, you know, the regulation has changed. The regulation has changed going forward. I don't know of any other cases in the hopper. Then again, I'm not privy to every case going on. Certainly going forward, the regulation was changed in 2005. So going forward, I don't see where we'd see much of this ever again. Roberts. Does the Court have a mediation program at all? I mean, is this one that so you could see that here the regulation was changed, clarified, but additional things are going on. Is this a situation where the service decides to, on appeal, to work it out or not? This Court does have a mediation program. I'm not authorized to accept or decline any settlement offers by myself. If Bergman's counsel wishes to talk to the mediator, then I'd be willing to talk to the mediator. I'm here as a visitor, so I'm not familiar with it. But it is this unique thing where the regulation has been clarified, but also perhaps amended. Again, if the Court wishes to direct the mediation program or wishes the counsel to speak to the mediator, then the government would do it. I can't promise, of course, that we would eventually settle the case, but we could talk. And if there are no further questions, we have addressed on our brief. I have no questions. Okay. Thank you very much. I appreciate your argument. Thank you. Just a couple of points. Counsel talked about the stipulations and in regards to false statements. And he quoted paragraph 20 of the stipulations, but he left out a couple of the later paragraphs. For example, paragraph 41 says, Quote, As of the beginning of the trial in this case, Respondent has not identified a specific false or fraudulent statement made by Mr. Greenberg directly to Mr. Bergman concerning the tax benefits Mr. Bergman could derive from his 2000 transaction. Paragraph 42. As of the beginning of the trial in this case, Respondent has not identified any document that he asserts contains a false or fraudulent statement pertaining to the tax benefits Mr. Bergman could derive from his 2000 transaction, other than statements made in Mr. Corbin's tax opinion. Petitioners do not stipulate that Mr. Corbin's tax opinion contains any false or fraudulent statement. Well, and the third one is paragraph 58, which simply says, As of the beginning of the trial in this case, Respondent has not identified a specific false or fraudulent statement made by Mr. Greenberg. He says that, well, the tax opinion contained false statements. The problem is the tax opinion was not done by KPMG. It was done by an independent accountant, Mr. Corbin. So even if that tax opinion contained false statements, and we don't maintain that it did, but even if it did, that is not attributable to KPMG under 6700A2. It would only be attributable if the summons had gone to Mr. Corbin. The bottom line here is the IRS, the Treasury Department, enacted this regulation and now they don't like it. So they're trying to disown it. And they did that in 2005. But it doesn't change the fact that as of the date that this amended return was filed, it was timely. Now, he talks about policy, but the problem here is that the original regulation did have a very legitimate, obvious purpose, and that was to penalize people who made false statements. And that didn't occur here. As to SALA, and this is my last point, the problem with SALA is that if we take this broad, expansive view, it is conceivable that the IRS could send out a summons to a major accounting firm that says, we're investigating any tax shelter. And now all of a sudden, every single person that did anything that later is determined to be a tax shelter is now precluded from filing a QAR. There has to be a level of specificity so that people know that this is the cutoff for that particular type of transaction. Well, that was the point of the second SALA opinion, wasn't it? Well, but the end result, Your Honor, was, is that the SALA decision ended up coming down against the taxpayers. Well, it's not that simple. Well, he let it go to trial. I'm sorry? The second opinion in SALA. Yes, Your Honor. He denied summary judgment. Yes. That meant there had to be a trial. I don't know how that was resolved. I don't know. He just found there was a tribal issue of fact. Yes, but I don't know what happened, whether there was a trial, a settlement, whether they relinquished the case. I just don't know. I'm talking about the – my concern was with the second – my comment was with respect to the second opinion in SALA. Yes. So I'm sorry. Your question is again, Your Honor? Well, the second opinion in SALA does seem to require some sort of specificity. Exactly. And that's our point, is the government here today would have there be no requirement that simply a subpoena. Our position there has to be a level of specificity, and here there wasn't. Thank you, Your Honor. Did you ever explore mediation with the other – with the IRS? I would have to consult with my client, Your Honor. By the way, what's the penalty here that's at play? $41,000. Okay. Okay. Thank you very much. Thank you. Thank you. The matter is submitted, and that takes care of – or ends our session for today. We appreciate counsel's arguments on both sides. Very helpful. And safe travels if you have to fly back home. Was this the last case of the day on purpose? No. It's the way the clerk set them up. Submitted. Submitted.
judges: Huff, Gould, Paez